UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERMONDE QUINNTEZ BEY,<br><br>        Plaintiff,<br><br>v.<br><br>ROB LYONS, et al.,<br><br>        Defendants. | Case No. 3:17-cv-01068<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Waverly Crenshaw, Jr., Chief Judge

**REPORT AND RECOMMENDATION**

This civil rights action has been referred to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72(b). (Doc. No. 6.) Now pending is a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) by Defendants Rob Lyons, Glen Godwin, Shane McFarland, and Craig Tindall. (Doc. No. 15.) Bey filed a response in opposition. (Doc. No. 17.) The Magistrate Judge RECOMMENDS that Defendants' motion to dismiss (Doc. No. 15) be GRANTED.

**I.    Background**

Plaintiff Jermonde Quinntez Bey identifies as an "Aboriginal Indigenous Moorish-American" who is "bound to the Zodiac Constitution." (Doc. No. 1, PageID# 2, ¶ 4.) He has adopted the surname "Bey" to honor his "bloodline/pedigree" and "religious heritage[.]" (*Id.* at PageID #3, ¶ 11; Doc. No. 17, PageID# 57.) In March 2015, Bey sought to formalize this name change in his employment records with the City of Murfreesboro, where he worked part-time.

(Doc. No. 1, PageID# 3, ¶ 11.) Bey asked the payroll clerk for the City's human resources office to correct his name in the payroll records. (*Id.*) The clerk informed Bey that, before the payroll record could be changed, he had to change his name with the Social Security Administration. (*Id.*) Bey then wrote to Director of the Human Resources Glen Godwin, asserting that he had a "constitutionally secured religious and common law right to a name change, and that Mr. Godwin and others representing the [City of Murfreesboro] are obligated to recognize that right." (*Id.* at PageID# 3, ¶ 12.) On May 2, 2015, Godwin replied that the City must comply with Tennessee law, which requires a court order and approval from the Social Security Administration to formalize a name change. (*Id.* at PageID# 3, ¶ 14.)

Bey sent Godwin another letter requesting recognition of his name change. (*Id.* at PageID# 4, ¶ 16.) Shortly thereafter, "armed [p]olice [d]etectives visited [Bey's] domicile to question [him about] mail sent to [Godwin], which was also [copied] to . . . [City of Murfreesboro] Mayor, Shane McFarland." (*Id.* at PageID# 4, ¶ 17.) On January 15, 2016, Bey received a letter from Murfreesboro City Manager Rob Lyons, accusing Bey of "trying to intimidate a 'public official,'" and reiterating that Bey's "name change request cannot be grant[ed] unless [Bey] gets a court order." (*Id.* at PageID# 4, ¶ 18.) In an effort to demonstrate that he "[was not] a threat to anyone," Bey introduced himself to Lyons in April 2016 and informed him that he had changed his name with the "United States Social Security Administration Office" in December 2015. (*Id.* at PageID# 4, ¶ 19.) Lyons told Bey that a court order was still needed to finalize his name change with the City. (*Id.*) Bey then sent Lyons a letter of resignation from his employment with the City on July 8, 2016, citing violations "of his constitutionally secured rights and liberties" as the reason for his resignation. (*Id.* at PageID# 4, ¶ 20.)

Bey filed this lawsuit pro se on July 21, 2017, alleging under 42 U.S.C. § 1983 that, by refusing to recognize his name change, Defendants Lyons and Godwin violated his First, Fifth, and Ninth Amendment rights and the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb *et seq*. (*Id.* at PageID# 1, 4–5.) Bey also brings claims under 42 U.S.C. § 1986 against Defendants McFarland and Tindall for their failure to prevent violations of Bey's constitutional rights. (*Id.* at PageID# 6.) Bey seeks $75,000 in compensatory damages and $75,000 in punitive damages from each of the defendants in their individual and official capacities. (*Id.*)

Defendants move to dismiss Bey's complaint[1] under Rule 12(b)(6) on the grounds that: (1) Bey's claims under § 1983 and § 1986 are time-barred; (2) Bey failed to plead his claims under those statutes sufficiently; and (3) they are entitled to qualified immunity. (Doc. No. 16, PageID# 43.) Bey opposes each of these arguments.[2] (Doc. No. 17.)

---

[1] Defendants' motion to dismiss is ripe even though the Court granted Bey's nominal motion to amend his complaint. Bey's motion was better construed as one to correct a typographical error and, because it did not substantively affect his original complaint, Defendants' motion to dismiss that complaint is not moot.

[2] Bey also complains that he had not received Defendants' motion to dismiss in the mail as of November 21, 2017, and that he was only able to respond to it within fourteen days of its filing because he "traveled to [this Court] on or around the 16th of November, 2017 to receive a certified copy from the District Court Clerk." (Doc. No. 17, PageID# 62.) Counsel for Defendants filed a declaration in which he states that he inadvertently mailed the service copies of the motion to dismiss and accompanying memorandum to P.O. Box 322425 instead of the correct address, P.O. Box 332425. (Doc. No. 18, PageID# 63, ¶ 6.) The mail to Bey was returned as undeliverable on November 20, 2017, and, the next day, counsel "mailed [Bey] a letter via Certified Mail explaining the error and enclosing service copies of the pleadings." (*Id.* at PageID# 63, ¶ 7.) Bey appears to have received the mail from Defendants' counsel on November 27, 2017, five days after he filed his response in opposition to the motion to dismiss. (Doc. No. 18-4, PageID# 69.)

Bey states that "Defendants have the burden to prove that proper service has been served upon [him]" and requests that "the Court deny Defendants' Motion to Dismiss for improper service." (Doc. No. 17, PageID# 62.) The proper remedy for the delay in Bey receiving his service copy would have been an extension of time in which to respond. Bey timely filed his response and has not argued that he needed additional time to do so. Defendants' error therefore appears to have been harmless.

**II.     Legal Standard**

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court views Bey's allegations in the light most favorable to him and accepts all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, Bey must allege sufficient facts to show that his claims are "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Bey must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Failure to file within the statute of limitations is an affirmative defense, and Bey does not have to plead that a claim is timely in order to satisfy Rule 8(a). *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). "For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* Nevertheless, when the allegations in a complaint

"affirmatively show that [a] claim is time-barred," the claim may be dismissed on the pleadings. *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

**III. Analysis**

**A. Bey's § 1983 Claims Against Lyons and Godwin**

Section 1983 provides "a cause of action against any person who, under color of state law, [has deprived the plaintiff] of any right, privilege, or immunity secured by the Constitution and federal law." *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996). Section 1983 claims "are governed by the state-law statute of limitations for personal-injury torts." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124 (2005); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, actions for "injuries to the person" must be filed within one year after the cause of action accrues. Tenn. Code Ann. § 28-3-104(a)(1)(A); *Howell v. Farris*, 655 F. App'x 349, 351 (6th Cir. 2016). The question of when the cause of action accrues—and, thus, when the statute begins to run—is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Howell*, 655 F. App'x at 351. "Because an action generally accrues 'when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred,'" courts determining the accrual of a § 1983 action identify the "event that should have alerted the typical lay person to protect his or her rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (quoting *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007)).

Under a one-year statute of limitations, any of Bey's claims that accrued before July 21, 2016, are time-barred. Lyons and Godwin argue that Bey's § 1983 claims against them accrued no later than April 17, 2016, "when [Lyons] instructed [Bey that] the City continued to require a court order before they would allow his name to be changed on employment records." (Doc. No. 16, PageID# 46.) Bey responds that his "official final day working with the [City of Murfreesboro]

was on or about July 22, 2016 [and] . . . thereby within the statute of limitations." [3] (Doc. No. 17, PageID# 57.) Alternatively, he argues that Defendants' "ongoing refusal to recognize [his] name correction represents a 'continuing violation'" of his rights.[4] (*Id.*) Neither of Bey's arguments can succeed.

Bey's § 1983 claims accrued no later than April 17, 2016. Bey was aware of the policy he complains of as early as May 2, 2015, when Godwin first informed Bey that the City could not formalize his name change without a court order and the approval of the Social Security Administration. (Doc. No. 1, PageID# 3, ¶ 14.) On April 17, 2016, after learning that Bey had changed his name with the Social Security Administration, Lyons reiterated that Bey would need a court order to finalize the name change. (Doc. No. 1, PageID# 4, ¶ 19.) Bey's conversation with Lyons was the last alleged instance in which an employee of the City of Murfreesboro refused to formalize Bey's name change before Bey resigned. Thus, Lyons's final articulation of the City's position was the last act that caused Bey's injury. Bey's complaint affirmatively shows that he

---

[3]   Although Bey uses § 1983 to assert violations of his First, Fifth, and Ninth Amendment rights, the injury giving rise to the different constitutional claims is the same—Defendants' refusal to change his name in the city's personnel records. (Doc. No. 1, PageID# 4–5.) As explained herein, that injury was clear to Bey on April 17, 2016.

[4]   Bey's response in opposition to Defendants' motion to dismiss could be read as raising a third theory of timeliness. Bey cites *Virginia Hospital Association v. Baliles*, 868 F.2d 653 (4th Cir. 1989), for the proposition that "the continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." (Doc. No. 17, PageID# 58.) Although Bey alleges that Defendants Godwin and Lyons violated his rights by "enforcing . . . Tennessee Code 29-8-102"—which is the law that Godwin told Bey governed the "name correction process"—Bey has not raised a challenge to its constitutionality. (Doc. No. 1, PageID# 3–4, ¶¶ 14, 21.) Bey does not seek a declaration that § 29-8-102 is unconstitutional or an injunction barring its enforcement. (*Id.* at PageID# 6.) Nor has Bey named the State of Tennessee as a defendant in this action. *See* Fed. R. Civ. P. 5.1(a)(1)(B) (requiring a party who files a pleading that calls into question the constitutionality of a state statute to file a notice of constitutional question that states the question when "the parties do not include the state, one of its agencies, or one of its employees in an official capacity"). His citation of *Virginia Hospital Association* does not save his time-barred claims.

took no further steps to challenge the City's position after his conversation with Lyons, and his continued employment without recognition of his name change cannot be construed as "an event that . . . alerted [him] to protect his . . . rights." *D'Ambrosio*, 747 F.3d at 384. That event took place on April 17, 2016.

Nor can a continuing violation theory rescue Bey's claims. When the conduct that gave rise to a lawsuit straddles the limitations period—falling both outside of and within it—a plaintiff may be able to pull untimely claims into the period of viability by showing a continuing violation. *See Bowerman v. Int'l Union*, 646 F.3d 360, 366 (6th Cir. 2011) (explaining that, when a continuing violation is found, the court considers "all relevant actions allegedly taken pursuant to the [wrongful] policy or practice, including those that would otherwise be time barred") (alteration in original) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)). Although the continuing violation doctrine arose in the context of Title VII, it has been applied to § 1983 actions. *See Sharpe*, 319 F.3d at 267. To successfully assert a continuing violation, Bey must allege that "prior [unlawful] activity [] continues into the present," and not just that the *effect* of prior unlawful activity continues into the present.[5] *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003). Discrete acts, like a termination or nonpromotion, are easy to identify, and, when they occur outside of the limitations period, they cannot be made actionable under a continuing violation theory even if they are related to acts that occurred within the period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002); *see also Bowerman*, 646 F.3d at 366.

Lyons's refusal, on April 17, 2016, to formalize Bey's name change without a court order, like all the prior instances in which City employees denied Bey's requests, is an easily identifiable

---

[5] The other means of establishing a continuing violation—showing "a longstanding and demonstrable policy of [unlawful conduct]"—is not relevant to Bey's claims. *Bell*, 351 F.3d at 247.

7

discrete event that cannot be made actionable by piggybacking onto conduct that occurred within the limitations period. Further, Bey has not alleged that any misconduct occurred within the limitations period; all that he has alleged is that his name was still not changed in the personnel records on July 22, 2016, which was his last day of work. (Doc. No. 1, PageID# 4, ¶ 20; Doc. No. 17, PageID# 57.) That state of affairs on Bey's last day is a continued effect of Lyons's statement of the City's position on April 17, 2016, but it is not evidence of "continued unlawful acts." *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010).

Bey's complaint affirmatively shows that his § 1983 claims accrued by April 17, 2016. Because Bey cannot avail himself of the continuing violation doctrine, those claims are time-barred.[6] The Court need not address Godwin and Lyons's other arguments for dismissal of Bey's § 1983 claims.

### B. Bey's § 1986 Claims Against McFarland and Tindall

The purpose of 42 U.S.C. § 1986 is "'to punish those who aid and abet violations of [42 U.S.C.] § 1985.'" *McKinney v. Kasich*, No. 16-3344, 2017 WL 4541720, at *4 (6th Cir. Sept. 29, 2017) (quoting *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994)). Thus, without a violation of § 1985, there can be no violation of § 1986. *See Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (explaining that a failure to state a claim under § 1985

---

[6] It appears that Bey intended to use § 1983 as a vehicle to assert violation of his rights under RFRA rather than bring a separate claim under that statute. (Doc. No. 1, PageID# 1, 4.) The statute of limitations for a RFRA claim is four years. *Russell v. First Baptist Church, Fulton, Ky.*, No. 5:17CV-P54-GNS, 2017 WL 5162820, at *4 n.5 (W.D. Ky. Nov. 7, 2017); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 239 F. Supp. 3d 77, 84 (D.D.C. 2017) (citing 28 U.S.C. § 1658 and collecting cases). However, to the extent that Bey intended to raise a separate claim under RFRA, that claim fails because RFRA only supports a cause of action against the federal government. *See Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010) (citing *City of Boerne v. Flores*, 521 U.S. 507, 532–36 (1997); *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 436 (2006)).

"is fatal" to any § 1986 claim). To state a claim under 42 U.S.C. § 1985, Bey must allege the existence of: "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Webb v. United States*, 789 F.3d 647, 671–72 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518–19 (6th Cir. 2003)). The Supreme Court has interpreted § 1985's "language requiring intent to deprive of equal protection, or equal privileges and immunities" as requiring that "racial, or . . . otherwise class-based, invidiously discriminatory animus" motivate the conspiracy. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Webb*, 789 F.3d at 672.

McFarland and Tindall argue that Bey's § 1986 claims against them "are insufficient because his Complaint does not contain any allegations of a § 1985 conspiracy." (Doc. No. 16, PageID# 47.) Bey does not respond to that argument and, instead, states that his § 1986 claims are "sufficient and clearly state[] that Defendants McFarland and Tindall deprived [Bey] of his constitutionally secured rights [through their] neglect." (Doc. No. 17, PageID# 58.) Bey asserts that he can produce records to show that McFarland and Tindall had "proper notice" that Bey's rights were being violated. (*Id.*) Although not fully articulated, the theory behind Bey's § 1986 claim appears to be that Godwin and Lyons conspired to violate Bey's rights by denying his requests for a name change and that McFarland and Tindall knew that was happening, but did nothing to stop it. (*See* Doc. No. 1, PageID# 6, ¶ 24.)

Bey's allegations, even when viewed in the most favorable light, do not support the inference that Godwin and Lyons conspired to violate his rights. Bey alleges that he received a letter from Godwin on May 2, 2015, in which Godwin explained that Bey would need a court order

9

and a new Social Security card to complete the name change. (*Id.* at PageID# 3, ¶ 14.) Bey responded with a letter on December 21, 2015, copying McFarland and demanding that the City recognize his name change. (*Id.* at PageID# 4, ¶¶ 16, 17.) On December 29, 2015, Bey was questioned by detectives about the mail he had sent to Godwin and McFarland, and, on January 15, 2016, Bey received a letter from Lyons stating that Bey was trying to intimidate a public official. (*Id.* at PageID# 4, ¶¶ 17, 18.) On April 17, 2016, Lyons told Bey that, although he had changed his name with the Social Security Administration, a court order was still needed to reflect that change in the city's personnel records. (*Id.* at PageID #4, ¶ 20.) In sum, Bey alleges that Godwin and Lyons independently, and at different times, denied his request for a name change. Nowhere does he allege that they communicated about Bey's persistent requests or conspired to violate his rights. Bey's allegations support the inference that Lyons was aware of the letter that Bey sent to Godwin and McFarland—that letter appears to have been the source of Lyons's accusation that Bey was trying to intimidate a public official—but that awareness alone is not sufficient to establish communication between Lyons and Godwin, let alone the "meeting of the minds" needed to allege a § 1985 conspiracy. *Amadasu*, 514 F.3d at 507.

Bey has failed to allege the first element of a § 1985 claim—that there was a conspiracy—and it is therefore impossible for him to adequately allege that McFarland and Tindall violated § 1986. McFarland and Tindall's motion to dismiss for failure to state a § 1986 claim should be granted.[7]

---

[7] Even if Bey had provided allegations linking Godwin and Lyons, his claim would still fail under the "intracorporate conspiracy doctrine," which states that, "where all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Amadasu*, 514 F.3d at 507 (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991)). That doctrine has been applied to governmental entities. *McGuire v. Lewis*, No. 1:12-CV-986, 2014 WL 1276168, at *5 (S.D. Ohio Mar. 27, 2014) (collecting cases). Godwin and Lyons are both employees of the City of Murfreesboro, and Bey

**IV.     Recommendation**

In light of the foregoing, the Magistrate Judge RECOMMENDS that Defendants' motion to dismiss (Doc. No. 15) be GRANTED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 15th day of August, 2018.

                                          ALISTAIR E. NEWBERN
                                          United States Magistrate Judge

---

does not anywhere allege that either of them "was engaged in personal, private pursuits, rather than in pursuits within the scope of [their] employment" at the time of their alleged misconduct. *Id.*

11

Case 3:17-cv-01068    Document 20    Filed 08/15/18    Page 11 of 11 PageID #: 81